# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAVE SAMUELSON**, | Case No. 3:22-cv-1923-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **JEWELL SCHOOL DISTRICT 8, STEVE PHILLIPS, RON BROWN, JON WOOD, SHANNON WOOD, ERIC DOTSON, CHANCE MOORE, TOM BERGIN, BRIAN MEIER, and JOHN & JANE DOE 1-15**, | |
| Defendants. | |

Robert R. Parker, Jr., 111 SW Fifth Ave., Suite 3150, Portland, OR 97204. Of Attorneys for Plaintiff.

Karen M. Vickers and Beth Plass, VICKERS PLASS LLC, 5200 SW Meadows Rd., Suite 150, Lake Oswego, OR 97035. Of Attorneys for Defendants Jewell School District 8, Jon Wood, and Shannon Wood.

Lowell P. McKelvey, MCKELVEY LAW LLC, 1205 NW 25th Ave., Portland, OR 97210. Of Attorneys for Defendant Steve Phillips.

Dirk L. Pierson, Oregon Department of Justice, Trial Division, Torts Section, 1162 Court St. NE, Salem, OR 97301. Of Attorneys for Defendant Ron Brown.

Andrew D. Campbell, HETZEL WILLIAMS PC, PO Box 1048, Salem, OR 97308. Of Attorneys for Defendants Eric Dotson, Chance Moore, and Tom Bergin.

Noah Jacob Gordon and Nicole M. Rhoades, DAVIS ROTHWELL EARLE & XÓHIHUA, PC, 200 SW Market Street, Suite 1800, Portland, OR 97201. Of Attorneys for Defendant Brian Meier.

**Michael H. Simon, District Judge.**

Plaintiff Dave Samuelson brings this civil action against Steven Phillips (Phillips), Jewell School District 8 (the School District), Jon Wood, Shannon Wood (also referred to as "Wood"),[1] Brian Meier, Deputy Eric Dotson, Deputy Chance Moore, former Sheriff Tom Bergin, District Attorney Ron Brown, and John and Jane Does one through fifteen (collectively, Defendants). Plaintiff alleges that Defendants[2] deprived him of constitutional rights in violation of 42 U.S.C. § 1983 (Count I); violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968 (Counts II and III); and committed a variety of state law offenses, including malicious prosecution, abuse of process, wrongful termination, intentional infliction of emotional distress (IIED),[3] defamation, age discrimination, tortious interference, and negligent oversight, training, and supervision (Counts IV-IX).

Before the Court are three motions to dismiss Plaintiff's First Amended Complaint (FAC). Defendants Deputy Dotson, Deputy Moore, and Sheriff Bergin (collectively, the County Defendants) bring one motion to dismiss. Defendant Meier brings another motion to dismiss.

---

[1] Jon Wood and Shannon Wood are unrelated.

[2] The First Amended Complaint often refers to "Defendants" generally, such that the specific Defendants to whom Plaintiff refers are unclear. That is so not only for Plaintiff's factual allegations, but also for his claims. A complaint may be factually deficient when it "lumps defendants together and fails to adequately distinguish claims and alleged wrongs among defendants. . . . Plaintiffs must allege more than generic and conclusory allegations demonstrating that 'Defendants' collectively engaged in [misconduct] and allege with at least some degree of specificity the acts which each defendant is alleged to have engaged in which support Plaintiff's claims." *McKeon v. Cent. Valley Cmty. Sports Found.*, 2018 WL 6436256, at *4 (E.D. Cal. Dec. 7, 2018) (collecting cases). No Defendant, however, has moved to dismiss on this ground or moved for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. Where the First Amended Complaint refers generally to "Defendants," the Court construes Plaintiff's allegations and claims to apply to Defendants who appear to be the subject of those allegations and claims.

[3] Plaintiff refers to this claim as one for "intentional infliction of mental anguish."

Defendants School District, Jon Wood, and Shannon Wood (collectively, the District Defendants) bring the third motion to dismiss.[4] All motions are brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant Phillips moves to join those motions to dismiss.[5] Although Phillips missed his deadline by a few days, counsel explained the delay, Phillips offers no new argument or facts, and Plaintiff did not object to the late filing. The Court therefore grants *nunc pro tunc* an extension of Phillips' deadline to respond to Plaintiff's Complaint to July 5, 2023, accepts Phillips' motion as timely, grants his motion for joinder, and considers Phillips one of the Defendants to have moved to dismiss (collectively, the Moving Defendants). For the reasons below, the Court grants in part and denies in part the Moving Defendants' motions to dismiss.[6]

## STANDARDS

### A.  Motion to Dismiss under Rule 12(b)(6)

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, a court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629

---

[4] All Defendants move to dismiss Samuelson's FAC except District Attorney Brown, who answered the FAC. *See* ECF 41. Thus, in this Opinion and Order the Court does not address whether the claims against Brown should be dismissed.

[5] In their motions to dismiss, the District Defendants and Meier also move to join in the motions filed by all other Moving Defendants. The Court grants these requests.

[6] The Court has considered the submitted briefing and does not believe that oral argument will assist the Court in ruling on the pending motions to dismiss.

F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Off. Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit a plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted); *see also Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (stating that to satisfy the requirements of Rule 8 of the Federal Rules of Civil Procedure to o survive a motion to dismiss, "plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" (quoting *Twombly*, 550 U.S. at 557)).

## B.  Claims under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a complaint must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. *West v.*

*Atkins*, 487 U.S. 42, 48 (1988); *Taylor v. List*, 880 F.2d 1040, 1046 (9th Cir. 1989). In a § 1983 action, a plaintiff must also establish both causation-in-fact and proximate (*i.e.*, legal) causation. *Harper v. City of Los Angeles*, 533 F.3d 1010, 1026 (9th Cir. 2008). A plaintiff can show causation-in-fact "only if the injury would not have occurred 'but for' [the defendant's] conduct." *Chaudhry v. Aragón*, 68 F.4th 1161, 1169 n.11 (9th Cir. 2023) (quoting *White v. Roper*, 901 F.2d 1501, 1505 (9th Cir. 1990)). Allegations of causation in a § 1983 claim "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988).

An individual acts "under color of state law" for purposes of § 1983 when the individual has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Rawson v. Recovery Innovations, Inc.*, 975 F.3d 742, 748 (9th Cir. 2020) (quoting *West*, 487 U.S. at 49). Generally, private parties are not acting under color of state law. *Price v. Hawaii*, 939 F.2d 702, 707-08 (9th Cir. 1991). To act under color of law does not require that the defendant be an employee of the state, but he must be "a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). "Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purposes of § 1983 actions."[7] *Id.* at 27-28.

---

[7] There are four factors or tests that courts use to determine whether a private party is acting under color of state law: "(1) public function, (2) joint action, (3) governmental compulsion or coercion, and (4) governmental nexus." *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835-36 (9th Cir. 1999). "Whether a private party engaged in state action is a highly factual question" in which the nature and extent of the relationship between the private party and the state is "[c]rucial." *Brunette v. Humane Soc'y of Ventura Cnty.*, 294 F.3d 1205, 1209 (9th Cir. 2002).

**C. Federal RICO Claims Under 18 U.S.C. § 1962(c)**

"RICO was intended to combat organized crime, not to provide a federal cause of action and treble damages to every tort plaintiff." *Oscar v. Univ. Students Co-operative Ass'n*, 965 F.2d 783, 786 (9th Cir. 1992), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005). To state a civil claim under that provision, a plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's business or property." *Coronavirus Rep. v. Apple, Inc.*, 85 F.4th 948, 958 (9th Cir. 2023) (quoting *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005)).

RICO defines "racketeering activity" as "any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud, and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'publishable' under federal law." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 481-82 (1985) (quoting 18 U.S.C. § 1961(1)). A "pattern" of racketeering activity "requires at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Those acts must be "related"[8] and "continuous." [9] *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th

---

[8] Predicate offenses are "related" if they have "the same or similar purpose, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Howard v. Am. Online Inc.*, 208 F.3d 741, 749 (9th Cir. 2000) (quoting *H.J. Inc.*, 492 U.S. at 239).

[9] "'Continuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989). "'Closed-ended' continuity is established by showing that related predicate acts occurred over a 'substantial period of time.'" *Allwaste, Inc. v. Hecht*, 65 F.3d 1523, 1527 (9th Cir. 1995) (quoting *H.J. Inc.*, 492 U.S. at 242). "Open-ended continuity is the threat that criminal conduct will continue into the future. It is established by showing either that the predicate acts 'include a specific threat of repetition extending indefinitely into the future' or that the predicate acts were 'part of an ongoing entity's regular way of doing business.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242).

Cir. 1995) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). To recover damages under RICO, a civil plaintiff must also show that the defendant's RICO violation directly and proximately caused an injury to the plaintiff's "business or property." *See* 18 U.S.C. § 1964(c); *Molina-Aranda v. Black Magic Enters., L.L.C.*, 983 F.3d 779, 784 (5th Cir. 2020); *see also CGC Holding Co., LLC v. Hutchens*, 974 F.3d 1201, 1213 (10th Cir. 2020) ("RICO requires that a plaintiff prove both but-for and proximate cause.").

Under 18 U.S.C. § 1962(d), a plaintiff may bring a claim for *conspiracy* to violate § 1962(c). "The elements of a conspiracy under § 1962(d) are simply (1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the *overall objective* of the RICO offense." *United States v. Rosenthal*, 805 F.3d 523, 530 (5th Cir. 2015) (emphasis in original) (quotation marks omitted). The "key question" in a RICO conspiracy case is whether the defendant "knew about and agreed to facilitate" a scheme that would involve the commission of two predicate acts. *United States v. Fiander*, 547 F.3d 1036, 1041 (9th Cir. 2008) (quotation marks omitted).

## BACKGROUND[10]

Plaintiff is a resident of Clatsop County, Oregon. He was an athletics coach at the School District and a member of the School District's Board. As a member of the School Board, Plaintiff spoke out against the hiring of Phillips as school district Superintendent. Plaintiff

---

[10] Plaintiff asserts new facts in his responses to the Moving Defendants' motions to dismiss, but those are not properly before the Court. *See Schneider v. Cal Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). The Court limits this section to the factual allegations in the FAC that the Court understands to support Plaintiff's legal claims and matters of which the Court may take judicial notice, including the existence and dates of public court filings, including in *Samuelson v. Jewell School District No. 8*, Case No. 20CV03015 (Clatsop Cnty. Cir. Ct.). *See* Fed. R. Evid. 201(d); *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (stating that when a court takes judicial notice of public records such as court opinions, it does so "not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." (quotation marks omitted)).

alleges that before Phillips became Superintendent, Phillips had been forced to resign from the Beaverton School District after posting purportedly racist and offensive messages on the social media platform Twitter (now X), including "Immigrants kill thousands of Americans every year" and are "more dangerous than assault rifles." ECF 36 (FAC) ¶ 32. Plaintiff's arguments to the School Board failed, however, and the School District hired Phillips as Superintendent.

As an athletics coach for the School District, Plaintiff worked with Wood, another coach. They purportedly shared a "platonic, jocular 'coach-to-coach' relationship." FAC ¶ 15. Wood purportedly "slapped [Plaintiff] on the buttocks or reached into his back pocket and put a few bills in the pocket" at times—behavior apparently in line with the nature of their relationship. *Id.*

Plaintiff alleges that he was informed by the parent of a student athlete that Wood was engaged in an extramarital affair with Meier, another (now former) member of the School Board and the parent of a student coached by Wood at that time. FAC ¶ 14. Plaintiff reported this information to then-Superintendent Phillips, in what Plaintiff thought was a confidential disclosure. FAC ¶ 16. Plaintiff alleges that he received a text message from Wood within 48 hours of that disclosure, asking Plaintiff whether he told Phillips about Wood's purported affair. *See* FAC ¶ 17. Plaintiff responded that he had. FAC ¶ 18. Plaintiff also alleges that Phillips disclosed Plaintiff confidential report to Wood because Phillips "held a grudge against" Plaintiff for his earlier position against hiring Phillips, and that Wood's allegation was "the perfect opportunity" to retaliate. FAC Intro; ¶ 32. Almost immediately after Phillips informed Wood of Plaintiff's report, Wood filed what Plaintiff alleges were retaliatory and false harassment claims against Plaintiff. FAC Intro.

Shortly after the exchange between Plaintiff and Wood, Plaintiff alleges that agents, employees, or representatives of the School District and the Clatsop County Sheriff's Office "targeted" Plaintiff for "touching Wood's buttocks over her clothing." FAC ¶ 18. Plaintiff

alleges that Wood's accusation was false and made in retaliation for Plaintiff's disclosure of Wood's extramarital affair. FAC Intro; ¶ 19. Plaintiff further alleges that Wood has engaged in a pattern of filing frivolous and malicious complaints against her colleagues, both before and after filing her complaint against Plaintiff. FAC ¶ 21.

Plaintiff alleges that in response to Wood's complaint, the District Defendants and Phillips failed to conduct an investigation that was "fair, impartial, and/or reasonably appropriate." FAC ¶ 55. Plaintiff contends that both Phillips (as then-Superintendent) and Jon Wood, who served as School Principal, "knew the claims against Plaintiff were false" because both Defendants had indicated that they were aware of Shannon Wood's "history of using these types of claims as retaliation in work disputes." FAC ¶ 60.

Phillips allegedly terminated Plaintiff's employment and issued a directive barring him from school property unless Plaintiff was escorted by his wife or another person over the age of 40, and restricting Plaintiff from visiting the classroom of Plaintiff's grandson unless Phillips was present. FAC ¶¶ 52-53. Plaintiff appealed to the School Board, which affirmed Phillips's decision in November 2019, purportedly without considering Plaintiff's defense. FAC ¶ 72. Plaintiff states that he subsequently filed a tort claims notice that was served on "the School Board Defendants"[11] and that on January 15, 2020, he filed a Petition for Writ in Clatsop County Circuit Court seeking review and reversal of the School Board's decision. FAC Intro; ¶¶ 27, 54; Vickers Decl., Ex. 1 (State Court Docket) (ECF 45-1). Plaintiff settled that dispute with the School District on October 17, 2022. FAC ¶¶ 54, 73.[12]

---

[11] Plaintiff does not specify which of the named Defendants in this case were served with the notice and does not provide any information about its contents.

[12] Plaintiff states that the "writ was signed" on October 17, 2022, but is unclear to what Plaintiff refers. The case docket indicates that the Circuit Court entered judgment dismissing the case with prejudice on October 24, 2022. State Court Docket at 1, 4.

Plaintiff further alleges that the School District targeted Plaintiff while failing to investigate his complaint about Wood. FAC ¶ 19. He also alleges that the School District failed to investigate a complaint against another employee that involved accusations of worse activity than that of which Plaintiff had been accused, including selling drugs to students and having sexual relations with a student. FAC Intro; ¶ 46. Plaintiff also alleges that the School District pays for Wood's legal counsel despite no longer employing her. FAC ¶ 22.

Wood filed a Petition for a Stalking Protective Order against Plaintiff based on the same allegedly false allegations, but the state court denied her petition on or about September 27, 2019, allegedly for lack of "legal basis." FAC ¶ 24. Deputies Moore and Dotson then cited Plaintiff, who was charged with sexual harassment and telephonic harassment. FAC ¶ 30. Plaintiff states that he was "arraigned for a second time"[13] in January 2020, at which point he was charged with ten counts. *Id.*; *see also* Campbell Decl., Ex. 1 (ECF 38-1) (Amended Information dated January 31, 2020, listing five counts of harassment and five counts of third-degree sexual abuse). According to Plaintiff, District Attorney Brown "elevated" Wood's single claim of harassment, which was based on "single incident," into "ten criminal charges." FAC ¶ 26. Plaintiff further alleges that Wood met with Brown in his office at the time of Plaintiff's first arraignment and after his second arraignment. FAC ¶¶ 36-37. Plaintiff also alleges that Principal Jon Wood told a School District employee that Brown would be coming to the School District to "coach witnesses." FAC ¶ 51.

Plaintiff alleges that all criminal charges arose from false allegations made by Wood. FAC ¶ 30. According to Plaintiff, Deputy Moore, Sheriff Bergin, and District Attorney Brown all failed to conduct a fair or reasonable investigation into Wood's allegations, and that even a

---

[13] It is unclear from the FAC when the first alleged arraignment occurred.

"cursory" investigation performed in accordance with law enforcement guidelines would have revealed the "fatal flaws" in those allegations and Wood's credibility. FAC ¶¶ 55-56. Plaintiff alleges that Deputies Moore and Dotson summoned Plaintiff to meet with them under false pretenses, and then charged him with sexual harassment and telephonic harassment. FAC ¶¶ 28-30. Plaintiff further alleges that law enforcement body camera footage shows Sheriff's deputies intimidating witnesses who were supportive of Plaintiff. FAC ¶ 50.

Plaintiff contends that Brown's prosecution of Plaintiff was retaliatory. FAC ¶¶ 41-42. Among other things, Plaintiff alleges that the Clatsop County District Attorney's Office held animosity toward Plaintiff wife, who was a Clatsop County Commissioner and had voted against awarding a "stipend" to the District Attorney's Office. FAC ¶ 33. Plaintiff alleges various additional purported conflicts of interest held by District Attorney Brown. FAC ¶¶ 34-39.

Plaintiff alleges that Phillips served subpoenas for the District Attorney's Office at the school and, according to Plaintiff, Phillips pressured the employee-witnesses to cooperate with District Attorney Brown for fear of their jobs. FAC ¶ 57. Phillips allegedly "coached" witnesses and did so many times because Plaintiff's trial was rescheduled nine times. FAC ¶ 58. Plaintiff also alleges that Phillips berated staff if they made any positive or supportive comment toward Plaintiff, and that Phillips demanded to know whether staff were "team Samuelson" or "team Jewell School." FAC ¶ 59.

While the criminal charges were being prosecuted against Plaintiff, he suffered a heart attack and underwent heart surgery. FAC ¶¶ 64-65. After Plaintiff allegedly rejected an offer by Brown to drop all but one charge if Plaintiff paid money to Wood, Plaintiff's wife was investigated for felony witness tampering related to the case against Plaintiff. FAC ¶¶ 66-68. Plaintiff and his wife hired a criminal defense attorney and litigated for two years before the Clatsop County Sheriff's Office allegedly disclosed that it had destroyed "exculpatory

information" related to the cases against both Plaintiff and his wife. FAC ¶ 68. After that disclosure, on December 8, 2021, all charges against Plaintiff were dismissed. FAC ¶ 70; Campbell Decl., Ex. 2 (Order and Judgment for Dismissal) (ECF 38-2). Plaintiff states that he continues to suffer emotional distress from the ordeal, including suffering from post-traumatic stress disorder. FAC ¶ 70.

Plaintiff contends that after the charges were dismissed, Defendants continued to defame him. According to Plaintiff, a newspaper published a statement made by District Attorney Brown that "they had a good case" against Plaintiff, and other Defendants made similar statements, including at school events. FAC ¶ 71.

There are two defendants against whom Plaintiff alleges only a few facts. Against Tom Bergin, Plaintiff alleges that Bergin had served as Sheriff of Clatsop County but does not allege when Bergin did so. FAC ¶ 11. According to Plaintiff, Bergin "ratified" the unconstitutional acts of Deputies Moore and Dotson. FAC ¶ 76. Plaintiff alleges that Bergin had duties to properly train, oversee, and supervise his deputies, was absent approximately 75 percent of the time, and failed properly to train his employees. FAC ¶ 129. For Meier, Plaintiff generally alleges that Meier publicized allegedly false allegations to the Sheriff's Office. FAC ¶ 116. Plaintiff also alleges that the administrative proceedings at the school were improperly instituted to provide a defense for Meier and Wood's inappropriate relationship. FAC ¶ 101. Plaintiff alleges no other relevant facts about Meier.

## DISCUSSION

### A. Joint Liability

Plaintiff alleges and argues that all Defendants are responsible for the acts of all other Defendants because they engaged in a single conspiracy. Plaintiff, however, does not articulate what that single conspiracy was or what was its objective. The allegations by Plaintiff show two

separate alleged conspiracies with different objectives. The first is the alleged conspiracy among the School District, Shannon Wood, Meier, Jon Wood, Phillips, and perhaps unidentified Doe School Board defendants to improperly investigate Plaintiff for alleged school policy infractions, not provide him with proper administrative proceedings, and remove him from his school role and other rights at the school (administrative conspiracy). The second is the alleged conspiracy among Shannon Wood, Phillips, District Attorney Brown, and Deputies Moore and Dotson, Sheriff Bergin, and perhaps unidentified Doe law enforcement defendants to unfairly investigate and improperly prosecute Plaintiff (prosecutorial conspiracy).

The Court rejects Plaintiff's contention that the allegations support that any other Defendants participated in the alleged conspiracies. The Court dismisses Plaintiff's claims based on the alleged conspiracies brought against any other Defendant than the participants identified by the Court. Further, Plaintiff's factual allegations are insufficient to support that Meier, Bergin, and other unidentified School Board or law enforcement defendants participated in the alleged conspiracies. Thus, in evaluating the sufficiency of Plaintiff's claims, the Court will consider only the alleged administrative conspiracy involving the School District, Shannon Wood, Jon Wood, and Phillips, and the alleged prosecutorial conspiracy involving Shannon Wood, Phillips, Brown, and Deputies Moore and Dotson.

Additionally, Plaintiff's factual allegations against Bergin and Meier are not enough to state any claim against those defendants individually or as participants in a conspiracy. The Court thus dismisses all claims against them. Plaintiff has leave to amend those claims if Plaintiff believes he can allege facts sufficient to state a claim against Bergin or Meier, either individually for personal liability, for supervisor liability,[14] or as a member of a conspiracy.

_____

[14] *See Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) (explaining that supervisors "can be held liable [under § 1983] for: 1) their own culpable action or inaction in the

**B.  Claims under 42 U.S.C. § 1983**

Plaintiff alleges that "Defendants engaged in a pattern and practice of misconduct, under color of state law, that deprived Plaintiff of rights, privileges, and immunities protected under the Constitution and laws of the United States of America," and therefore actionable under 42 U.S.C. § 1983. First, Plaintiff alleges that Defendants subjected him to substantive and procedural due process violations in the "reporting, investigation, quasi-judicial administrative hearings, and appeal of same," in violation of the Fourteenth Amendment. Those allegations are directed at the members of the alleged administrative conspiracy. Second, Plaintiff claims that Deputies Moore and Dotson's "initial investigation" of the allegations that Wood brought against Plaintiff involved "constitutional deprivations" that were "ratified by [Sheriff Bergin]." Third, Plaintiff alleges additional "constitution deprivations" related to the prosecution of Plaintiff by District Attorney Brown. According to Plaintiff, Brown "knew or in the exercise of reasonable diligence would have known" that the accusations brought against Plaintiff "had no genuine basis in material fact." The second and third allegations are directed at the prosecutorial conspiracy.

The District Defendants construe Plaintiff's due process claim as a procedural due process claim. The District Defendants argue that Plaintiff has not alleged a constitutionally protected property interest. The County Defendants move only against Plaintiff's malicious prosecution claim, even though he alleges substantive and procedural due process violations relating to both the investigation and his prosecution. Because the FAC is less than clear and for judicial efficiency, the Court evaluates the sufficiency of Plaintiff's due process claim for both the investigation and the prosecution.

---

training, supervision, or control of subordinates; 2) their acquiescence in the constitutional deprivation of which a complaint is made; or 3) for conduct that showed a reckless or callous indifference to the rights of others." (quotation marks omitted)).

1.  **State Actors**

The Court begins by evaluating who are state actors for purposes of Plaintiff's § 1983 claims. Deputies Moore and Dotson are state actors. *See Jackson v. Barnes*, 749 F.3d 755, 764 (9th Cir. 2014). The School District and its employees also are state actors. *Cf. Belanger v. Madera Unified Sch. District*, 963 F.2d 248 (9th Cir. 1992). Shannon Wood, however, is alleged to have engaged in conduct that appears to have been outside the course and scope of her employment with the School District with respect to the alleged prosecutorial conspiracy. For that conduct, she is not a state actor under § 1983 unless she engaged in "joint action" with the law enforcement state actors.

The Ninth Circuit has explained:

> Under the joint action test, courts examine whether state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights. The test focuses on whether the state has so far insinuated itself into a position of interdependence with [the private actor] that it must be recognized as a joint participant in the challenged activity. A plaintiff may demonstrate joint action by proving the existence of a conspiracy or by showing that the private party was a willful participant in joint action with the State or its agents.
>
> * * *
>
> Our cases have been careful to require a substantial degree of cooperation before imposing civil liability for actions by private individuals that impinge on civil rights.

*Franklin v. Fox*, 312 F.3d 423, 444 (9th Cir. 2002) (cleaned up).

Merely complaining to the police or swearing out an affidavit that forms the basis of an arrest cannot alone constitute joint action. *O'Handley v. Weber*, 62 F.4th 1145, 1160 (9th Cir. 2023). "[C]onsultation and information sharing during [an] investigation" alone also does not

suffice to support joint action. *Id.* Plaintiff, however, alleges that Wood was part of the prosecutorial conspiracy for purposes of Plaintiff's § 1983 claims.[15]

Plaintiff alleges that Phillips and Wood knew that her claims were false, that Wood met with District Attorney Brown, that after those meetings he arraigned Plaintiff and in the second arraignment Brown charged Plaintiff with many baseless charges, that Phillips and the deputies intimidated and coerced witnesses to testify against Plaintiff and in favor of Wood, and that Phillips and the deputies suppressed exculpatory evidence in Wood's favor. At this stage of the litigation, Plaintiff's allegations are enough to show what Wood engaged in a conspiracy with Phillips, Brown, and the deputies to investigate and prosecute Samuelson without a full and fair investigation to favor Wood's purportedly false charges against Plaintiff. She is thus a state actor for this alleged conduct.[16]

---

[15] Conspiracy is not itself a constitutional tort under § 1983: "mere proof of a conspiracy" cannot establish a § 1983 claim. *Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) (cleaned up). To prevail on a claim asserting a conspiracy, a § 1983 plaintiff must show "an agreement or meeting of the minds to violate constitutional rights." *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quotation marks omitted). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Id.* (quotation marks omitted). Conclusory allegations cannot state a claim of conspiracy: allegations of specific facts are required. *See Lacey*, 693 F.3d at 937 (determining that "conclusory conspiracy allegations" that "d[id] not define the scope of any conspiracy involving [the defendant], what role he had, or when or how the conspiracy operated" are insufficient).

Along with establishing an agreement or meeting of the minds to violate constitutional rights, a § 1983 plaintiff alleging conspiracy must prove that an actual deprivation of his constitutional rights resulted from the conspirators' agreement. *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989); *accord Landrigan v. City of Warwick*, 628 F.2d 736, 742 (1st Cir. 1980) ("While conspiracies may be actionable under section 1983, it is necessary that there have been, besides the agreement, an actual deprivation of a right secured by the Constitution and laws.").

[16] It does not appear that Phillips' alleged conduct was outside the course and scope of his employment for purposes of assessing whether he was a state actor during the alleged prosecutorial conspiracy, but even if it was, Plaintiff has sufficiently alleged facts showing that Philips was a member of the alleged prosecutorial conspiracy.

### 2. Due Process Claim

#### a. Substantive Due Process

To state a claim under § 1983 for violation of substantive due process, "a plaintiff must, as a threshold matter, show a government deprivation of life, liberty, or property." *Nunez v. City of L.A.*, 147 F.3d 867, 871 (9th Cir. 1998). "[O]nly the most egregious official conduct" establishes a substantive due process violation. *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

Samuelson generally alleges that he was deprived of his liberty interest. *See* FAC ¶ 85. He does not, however, specifically identify the liberty interest in his § 1983 cause of action. In his briefing, he repeatedly discusses his "arrest," but he does not sufficiently *allege in his FAC* that he was arrested.[17] Plaintiff does, however, repeatedly allege that he was not provided a fair or constitutionally sufficient investigation. *See, e.g.*, FAC Intro, ¶¶ 55, 76, 115. It appears from the allegations in his complaint and the arguments in his briefing that he is alleging a liberty interest from an unfair criminal investigation and prosecution on less than probable cause.[18] This allegation would only support a substantive due process claim for his criminal proceeding, and not his administrative proceeding.

The Eighth Circuit has recognized:

> Where state officials "have the opportunity to deliberate various alternatives prior to selecting a course of conduct, such action violates due process if it is done recklessly." To establish a violation of this right by a botched investigation, [plaintiffs] must

---

[17] The only mention of an arrest in his complaint is an allegation in his negligent training claim that he was "arrested without a grand jury hearing," FAC ¶ 129, but Plaintiff provides no other information about his purported arrest.

[18] Samuelson may also intend to allege a liberty interest based on fabrication of evidence, *see Caldwell v. City & County of San Francisco*, 889 F.3d 1105, 1115 (9th Cir. 2018), but it is unclear from his FAC. Because he does not argue this claim in his briefing or clearly allege it, the Court does not address it.

> show that [defendants] intentionally or recklessly failed to
> investigate, thereby shocking the conscience.

*Amrine v. Brooks*, 522 F.3d 823, 833-34 (8th Cir. 2008) (citation omitted) (quoting *Wilson v. Lawrence County*, 260 F.3d 946, 956 (8th Cir. 2001)). The Ninth Circuit has not specifically resolved whether a reckless investigation may support a substantive due process claim. The Ninth Circuit, however, quoted *Amrine* with approval in applying its recklessness standard in a different context, and noted that applying recklessness in that context is consistent with substantive due process. *Tennison v. City & County of San Francisco*, 570 F.3d 1078, 1089 (9th Cir. 2009).

The Ninth Circuit explained in *Tennison*,

> The instant case . . . is more akin to cases that apply a reckless
> indifference standard to due process claims because the decision
> whether to disclose or withhold exculpatory evidence is a situation
> in which actual deliberation is practical. For example, in *Amrine v.
> Brooks*, 522 F.3d 823 (8th Cir. 2008), the Eighth Circuit discussed
> a "substantive due process cause of action for reckless
> investigation." *Id.* at 833. The court stated that the liberty interest
> in such a cause of action is the interest in obtaining fair criminal
> proceedings, pursuant to *Brady*. *Id.* The court then explained that
> "[w]here state officials have the opportunity to deliberate various
> alternatives prior to selecting a course of conduct, such action
> violates due process if it is done recklessly." *Id.* at 833-34.

*Id.*[19] (quotation marks and citation omitted) (second alteration in *Tennison*). The Ninth Circuit held:

> We therefore hold that a § 1983 plaintiff must show that police
> officers acted with deliberate indifference to or reckless disregard
> for an accused's rights or for the truth in withholding evidence
> from prosecutors. This standard is consistent with the standard
> imposed in the substantive due process context, in which
> government action may violate due process if it "shocks the
> conscience."

---

[19] Because the liberty interest recognized in this due process right stems from *Brady v. Maryland*, 373 U.S. 83 (1963), it is unavailable in Plaintiff's administrative proceeding.

*Id.* (quoting *Lewis*, 523 U.S. at 846).

Given the Ninth Circuit's discussion in *Tennison* and the Eighth Circuit's persuasive case law, the Court finds that a reckless investigation claim is cognizable as a substantive due process claim in the Ninth Circuit and rests on the liberty interest of a fair criminal proceeding. Additionally, district courts within the Ninth Circuit have recognized such a claim. *See, e.g.*, *Figueroa v. Kern County*, 2021 WL 826216, at *7 (E.D. Cal. Mar. 4, 2021) (denying motion to dismiss substantive due process claim based on allegations that law enforcement agents relied on false evidence, coerced and intimidated witnesses, obtained false testimony from a minor, hid and distorted evidence, suppressed exculpatory evidence, falsified evidence by coercing witnesses, and failed to disclose their witness coercion); *Cox v. Mariposa County*, 2021 WL 4976698, at *12 (E.D. Cal. Oct. 26, 2021) (concluding that allegations that the county defendants investigated and prosecuted the defendant on obviously false accusation that they knew lacked merit, conspired to suppress exculpatory evidence, fabricated an affidavit for a search warrant, and pursued unwarranted code enforcement action were enough to state a substantive due process claim); *see also Baday v. Kings County*, 2022 WL 10631010, at *6 (E.D. Cal. Oct. 18, 2022) (recognizing the reckless investigation claim as separate from a substantive due process claim based on fabrication of evidence, citing *Amrine*, and concluding they both have the same statute of limitations); *Kurka v. Probst*, 2015 WL 424577, at *7 n.88 (D. Alaska Feb. 2, 2015), *aff'd*, 678 F. App'x 482 (9th Cir. 2017) (recognizing the reckless investigation claim, citing *Amrine*, but concluding that the plaintiff failed sufficiently to assert the claim).

Plaintiff's allegations of law enforcement misconduct are similar to those in *Figueroa*, and are sufficient at this stage to state a substantive due process claim against Deputies Moore and Dotson. Because the Court has concluded that Shannon Wood and Phillips are members of the prosecutorial conspiracy (which includes the reckless investigation conduct) with Deputies

Moore and Dotson, Plaintiff also states a reckless investigation substantive due process claim against Wood and Phillips under a § 1983 conspiracy claim. *See Lacey v. Maricopa County*, 693 F.3d 896, 935 (9th Cir. 2012) ("Conspiracy may, however, enlarge the pool of responsible defendants by demonstrating their causal connections to the violation; the fact of the conspiracy may make a party liable for the unconstitutional actions of the party with whom he has conspired."); *see also id.* (noting that a claim of conspiracy in a § 1983 case may "aid in proving claims against otherwise tenuously connected parties in a complex case"). The question remains, however, whether the allegations against Phillips and Wood are sufficient to state a claim against them individually.

Plaintiff alleges that Wood made false criminal allegations after her stalking order was denied and met with prosecutors near the time of Plaintiff's arraignments. These allegations are insufficient to meet the demanding standard of a substantive due process violation. It does not shock the conscience for a person purportedly falsely reporting a crime to have multiple meetings with prosecutors. Plaintiff does not allege that Wood intimidated witnesses or suppressed exculpatory evidence. Thus, Plaintiff does not sufficiently allege that Wood, individually, violated Plaintiff's substantive due process rights.

As for Phillips, Plaintiff alleges that Phillips knew Wood's allegations against Plaintiff were false, served subpoenas on behalf of law enforcement on school grounds, intimidated witness, suppressed exculpatory evidence, and coached witnesses. These allegations are sufficient at this stage to support a substantive due process claim against Phillips individually.

### b.  Procedural Due Process

To state a § 1983 claim for lack of procedural due process, a plaintiff must allege "three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of the

interest by the government; (3) lack of process." *Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).

Plaintiff's alleged liberty interest in a fair criminal proceeding does not apply in this context. Plaintiff's generic reference to his "liberty" interest is not enough to allege a cognizable liberty interest that would support his procedural due process claim whether for the law enforcement proceeding or the administrative proceeding. As noted, his reference to his "arrest" in his briefs was not pled.[20] Thus, Plaintiff fails to state a claim for his procedural due process claim.

### c. Malicious Prosecution

"Federal courts rely on state common law for elements of malicious prosecution." *Mills v. City of Covina*, 921 F.3d 1161, 1169 (9th Cir. 2019). Under Oregon law, a claim of malicious prosecution requires the plaintiff to prove: "(1) the institution or continuation of criminal

---

[20] Plaintiff also mentions his job and his reputation. To recover for the loss of his reputation associated with his job loss or prosecution generally, he must allege facts sufficient to meet the "stigma plus" test. To state a "stigma-plus" claim, a plaintiff must allege two elements: (1) "the public disclosure of a stigmatizing statement by the government, the accuracy of which is contested," and (2) "the denial of some more tangible interest such as employment or the alteration of a right or status recognized by state law." *Ulrich v. City & County of San Francisco*, 308 F.3d 968, 982 (9th Cir. 2002) (quotation marks omitted). "Where these elements exist, the plaintiff is 'entitled to notice and a hearing to clear his name.'" *Id.* (quoting *Bollow v. Fed. Rsrv. Bank of San Francisco*, 650 F.2d 1093, 1100 (9th Cir. 1981). Further, Plaintiff must allege facts showing that Defendants' stigmatizing statements have made Plaintiff unemployable within his profession. *See Blantz v. Cal. Dep't of Corr. & Rehab., Div. of Corr. Health Care Servs.*, 727 F.3d 917, 925 (9th Cir. 2013) ("[T]he liberty interests protected by the Fourteenth Amendment are implicated only when the government's stigmatizing statements effectively exclude the employee completely from her chosen profession."). Plaintiff has not satisfied those elements here.

To assert a property interest in his job itself, Plaintiff must allege some entitlement to ongoing employment. *See Bd. of Regents v. Roth*, 408 U.S. 564, 575-77 (1972); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538-39 (1985); *see also Dyack v. N. Mariana Islands*, 317 F.3d 1030, 1033 (9th Cir. 2003) (explaining that when an "employee serves at will, he or she has no reasonable expectation of continued employment, and thus no property right"). Plaintiff has not done so.

proceedings; (2) by or at the insistence of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in instituting the proceedings; (5) lack of probable cause for the proceedings; and (6) injury or damage as a result." *Miller v. Columbia County*, 282 Or. App. 348, 360 (2016) (footnote omitted); *accord Cannon v. Polk County/Polk Cnty. Sheriff*, 68 F. Supp. 3d 1267, 1289 (D. Or. 2014) (applying Oregon common law).

"Additionally, to maintain a § 1983 action for malicious prosecution, a plaintiff must show that the defendants prosecuted him for the purpose of denying him equal protection or another specific constitutional right." *Mills*, 921 F.3d at 1169 (cleaned up). Malicious prosecution actions brought under § 1983 "are not limited to suits against prosecutors, but may be brought . . . against other persons who have wrongfully caused the charges to be filed." *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). When a plaintiff brings a § 1983 claim against non-prosecutors for a *conspiracy* to maliciously prosecute, the plaintiff must also allege specific facts showing that the defendant "controlled the decision-making process of the prosecutor," or "otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." *McCarthy v. Mayo*, 827 F.2d 1310, 1316 (9th Cir. 1987); *Awabdy*, 368 F.3d at 1067.

Plaintiff adequately has pled the first, third, fourth, fifth, and sixth elements of a malicious prosecution claim under Oregon law. Plaintiff sufficiently has alleged facts showing that the criminal proceedings were started against him and terminated in his favor (first and third elements); there is a factual dispute about whether there was probable cause for him to be charged with five counts of harassment and five counts of third-degree sexual abuse, based on what Plaintiff alleges was a false allegation of a "single incident" (fifth element); and an alleged harm from the criminal proceedings (sixth element). The questions for each remaining Moving Defendant are whether Plaintiff sufficiently has alleged that the criminal proceedings were

instituted or continued at the insistence of the Defendant (second element), the Defendant acted with malice (fourth element), and the Defendant prosecuted Plaintiff for the purpose of denying him equal protection or another specific constitutional right (§ 1983 requirement).

As to the remaining Moving Defendants who allegedly participated in the prosecutorial scheme, Phillips, Deputies Moore and Dotson, and Shannon Wood, for all except Shannon Wood, Plaintiff has not alleged facts showing that criminal proceedings were instituted or continued "at the insistence" of any Defendant, as required to state a claim for malicious prosecution under Oregon law. *See Miller*, 282 Or. App. at 360. Plaintiff therefore has failed to state a claim for malicious prosecution under § 1983 against those Moving Defendants. *See Awabdy*, 368 F.3d at 1066-67. The allegations in the FAC are sufficient, however, to support the reasonable inference that criminal proceedings were instituted at the insistence of Wood. *See generally Waldner v. Dow*, 128 Or. App. 197 (1994) (evaluating requirements for a malicious prosecution claim brought against a private citizen (citing Restatement (First) of Torts, § 653)); *see also* Restatement (Second) of Torts § 653 (1977) (providing that "[a] private person who initiates or procures the institution of criminal proceedings against another who is not guilty of the offense charged is subject to liability for malicious prosecution if . . . he initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice"). Taking the allegations in Plaintiff's FAC as true, he also has alleged that Wood acted with malice.

As previously determined, Plaintiff also sufficiently has alleged that Wood engaged in a conspiracy with respect to her conduct relating to the criminal proceedings, and thus she has acted under color of state law. The Court also considers Plaintiff's alleged liberty interest to be the liberty interest articulated in *Armine*, Plaintiff's right to fair criminal proceedings. To assert a § 1983 malicious prosecution claim, however, Plaintiff must also allege that Wood prosecuted

Plaintiff *for the purpose* of denying him *a specific constitutional right*. *Mills*, 921 F.3d at 1169.

The FAC does not make such an allegation.[21]

### d. Statutes of Limitation

The District Defendants argue that Samuelson's § 1983 claim as related to his

administrative proceedings are barred by the statutes of limitation.[22] "Although state law

determines the length of the limitations period, federal law determines when a civil rights claim

accrues." *Knox v. Davis*, 260 F.3d 1009, 1013 (9th Cir. 2001) (quotation marks omitted). Under

federal law, the "discovery rule" typically governs the accrual of § 1983 claims such that "a

claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of

the action." *Id.* (quoting *TwoRivers v. Lewis*, 174 F.3d 987, 992 (9th Cir. 1999)).

The relevant statute of limitations for § 1983 claims is the forum state's statute of

limitations for personal injury actions. *Bird v. Dep't of Hum. Servs.*, 935 F.3d 738, 743 (9th

Cir. 2019). The Oregon statute of limitations for personal injury actions is two years.  Or. Rev.

---

[21] In his response to the County Defendants' motion to dismiss, Plaintiff also asserts—for the first time—that the charges against him were made in retaliation for his exercising his First Amendment rights. ECF 47 at 2-3. The FAC, however, does not allege a First Amendment retaliation claim, nor does the FAC include allegations that would support such a claim.

In his response to the County Defendants' motion to dismiss, Plaintiff also argues issues relating to a claim for "retaliatory arrest." The FAC, however, does not allege a claim for retaliatory arrest, or even clearly allege that Plaintiff was arrested. *See supra* note 17. The Court notes, however, that a § 1983 claim for retaliatory arrest based on the actions of the County Defendants may be barred by the two-year statute of limitations. *See Wallace v. Kato*, 549 U.S. 384, 391 (2007) (holding that the plaintiff's claim of false arrest accrued "when [plaintiff] appeared before the examining magistrate and was bound over for trial").

[22] The County Defendants concede that Plaintiff's § 1983 claims arising from the criminal investigation and prosecution are not time barred. *See, e.g.*, *McDonough v. Smith*, 139 S. Ct. 2149, 2156 (2018) (stating that a claim for malicious prosecution "accrues only once the underlying criminal proceedings have resolved in the plaintiff's favor"); *see also Baday v. Kings County*, 2022 WL 10631010, at *7 (E.D. Cal. Oct. 18, 2022) (concluding that reckless investigation substantive due process claims are the same as malicious prosecution for statute of limitations purposes).

Stat. (ORS) § 12.110(1)). "A claim may be dismissed under Rule 12(b)(6) on the ground that it is barred by the applicable statute of limitations only when the running of the statute is apparent on the face of the complaint." *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 969 (9th Cir. 2010) (quotation marks omitted); *see also Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013) (concluding that the district court "was correct to address" statute of limitations issues apparent on the face of the complaint).

Besides failing to allege a property or liberty interest, Plaintiff also has another problem with his due process claims relating to his administrative proceeding. The last alleged action taken by any Defendant related to the administrative hearings on Shannon Wood's harassment complaint was in November 2019, when the School Board affirmed Phillips' decision to terminate Plaintiff's employment and bar him from school property. Plaintiff filed this lawsuit on December 12, 2022. It is therefore clear from the face of the FAC that Plaintiff's § 1983 claims for substantive and due process violations in the School District administrative proceedings were filed outside the applicable two-year statute of limitations.

Plaintiff, implicitly conceding that his administrative proceeding due process claims are presumptively untimely, argues that equitable tolling should apply to these § 1983 claims because his claims were effectively tolled while he litigated his Petition for Writ in state court. Plaintiff does not, however, cite any authority in support of his argument that the filing of the Petition for Writ or the pendency of the related proceedings tolled his claims, in whole or in part.

For § 1983 claims, federal courts "borrow the forum state's tolling rules." *TwoRivers*, 174 F.3d at 992; *see also Wallace v. Kato*, 549 U.S. 384, 394 (2007). Tolling rules borrowed from state law include "those for the pendency of other proceedings." *Owen*, 2023 WL 5672887, at *3 (cleaned up). "Equitable tolling is sparingly used in Oregon." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1048 (9th Cir. 2016) (cleaned up). Under

Oregon law, "equitable tolling is available only when circumstances outside of the control of plaintiff make it impossible to comply with the statute of limitations." *Owen*, 2023 WL 5672887, at *3 (cleaned up).

For tolling to apply, a plaintiff must "adequately allege[] facts showing the *potential* applicability of the equitable tolling doctrine." *Stewart v. Rock Tenn CP, LLC*, 2015 WL 1883910, at *3 (D. Or. Apr. 24, 2015) (quoting *Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993)) (emphasis in original); *see also Ilaw v. Daughters of Charity Health Sys.*, 2012 WL 381240, at *12, 12 n.4 (N.D. Cal. Feb. 6, 2012) (evaluating Ninth Circuit law on the tolling doctrine in light of the Supreme Court's decisions in *Twombly* and *Iqbal*, and holding same (citing *Cervantes*)). Thus, where it is clear from the face of a complaint that equitable tolling should *not* apply, district courts properly may dismiss a claim barred by the applicable statute of limitations. *See Lien Huynh v. Chase Manhattan Bank*, 465 F.3d 992, 1004-05 (9th Cir. 2006) (affirming grant of motion to dismiss where it was clear that the plaintiffs "had the information necessary to bring suit" before the statute of limitations period ended and that no "extraordinary circumstances" beyond the plaintiffs' control made it impossible for them to timely file their claims (applying both state and federal law governing tolling)).

Plaintiff has not alleged facts showing the potential applicability of equitable tolling. He may, however, allege such facts in an amended complaint if he believes he can cure this defect.

### e.  Conclusion

The Court declines to dismiss Plaintiff's substantive due process claim against Shannon Wood, Phillips, and Deputies Moore and Dotson that specifically alleges reckless investigation.[23] The Court dismisses Plaintiff's remaining substantive and procedural due process claims against

---

[23] As noted, the claim against District Attorney Brown is unchallenged at this time.

these Defendants[24] based on Plaintiff's criminal proceedings for failure to allege a liberty or property interest, with leave to amend.

The Court dismisses Plaintiff's substantive and procedural due process claims against the School District, Phillips, Jon Wood, and Shannon Wood[25] based on Plaintiff's administrative proceeding for failure to allege a liberty or property interest and, independently, as time barred. If Plaintiff can allege facts supporting the application of equitable tolling and allege an applicable liberty or property interest, he may amend this claim.

The Court dismisses Plaintiff's malicious prosecution claim against Phillips and Deputies Moore and Dotson for failure to allege multiple elements of the claim. The Court dismisses this claim against Shannon Wood only for failure to allege a purpose to deprive Plaintiff of a constitutional right. Plaintiff may amend this dismissed claim.

## C. RICO

Plaintiff alleges both a pattern of racketeering in violation of 18 U.S.C. § 1962(c) and that Defendants engaged in a RICO conspiracy under 18 U.S.C. § 1962(d). Plaintiff alleges seven separate predicate offenses: "state law extortion"; mail fraud under 18 U.S.C. § 1341; wire fraud under 18 U.S.C. § 1343; banking fraud under 18 U.S.C. § 1344; obstruction of justice under 18 U.S.C. § 1503; retaliation against a witness, victim, or informant under 18 U.S.C. § 1951; and interference with interstate commerce and extortion under 18 U.S.C. § 1951.

---

[24] These are the only Moving Defendants against whom claims remain relating to the prosecutorial conspiracy because the Court dismissed claims against Bergin and concluded that Plaintiff failed to allege any other defendant participated in this alleged conspiracy.

[25] These are the only Moving Defendants against whom claims remain relating to the administrative conspiracy because the Court dismissed claims against Meier and concluded that Plaintiff failed to allege any other defendant participated in this alleged conspiracy.

Wire fraud, mail fraud, and bank fraud are all fraud crimes. Plaintiff has not alleged facts sufficient to support a finding of the commission of those crimes[26]—let alone done so under the applicable heightened pleading standard.[27] Plaintiff's allegations involve in person conduct, not electronically or through the mail, except for the alleged email distribution of witness subpoenas to Phillips to distribute, which is not use of wires to *defraud*. Nor has Plaintiff alleged any scheme to defraud a financial institution.

As for obstruction of justice, 18 U.S.C. § 1503 involves obstruction of federal proceedings. Plaintiff has alleged no facts about any action taken by any Defendant related to any federal proceeding. *See* 18 U.S.C. § 1503 (referring to "any court of the United States"); *Smith v. Aldridge*, 2018 WL 1434813, at *5 (D. Or. Mar. 22, 2018) (noting that 18 U.S.C. § 1503 "only applies to obstruction of justice in *federal* court proceedings" and collecting cases (emphasis in original)). As for retaliation under 18 U.S.C. § 1513, that provision similarly

---

[26] The elements of mail and wire fraud under RICO are: "(1) formation of a scheme or artifice to defraud; (2) use of the United States mails or wires, or causing such a use, in furtherance of the scheme; and (3) specific intent to deceive or defraud." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 557 (9th Cir. 2010). "The essential elements of bank fraud under 18 U.S.C. § 1344(1) are: (1) that the defendant knowingly executed or attempted to execute a scheme to defraud a financial institution; (2) that the defendant did so with the intent to defraud; and (3) that the financial institution was insured by the [Federal Deposit Insurance Corporation]." *United States v. Rizk*, 660 F.3d 1125, 1135 (9th Cir. 2011) (alteration in original) (quotation marks omitted)).

[27] The heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure applies to RICO claims alleging predicate acts involving fraud. *See Allwaste*, 65 F.3d at 1530. Rule 9(b) requires the pleader to "state the time, place, and specific content of the false representations as well as the identities of the partis to the misrepresentation. *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392-93 (9th Cir. 1988) (quotation marks omitted). That is, "[a]verments of fraud must be accompanied by the who, what, when, where, and how" of the alleged misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

applies only to actions taken in relation to federal court proceedings. *See* 18 U.S.C. § 1515(a) (defining "official proceeding" as used in 18 U.S.C. § 1513).[28]

The crime of interference with commerce by threats or violence under 18 U.S.C. § 1951 requires robbery, extortion, attempted or threatened robbery or extortion, or other acts or threats of physical violence that affects commerce; Plaintiff does not allege sufficient facts under that provision to state a claim under § 1962(c).[29] Finally, the predicate act of extortion under state law[30] requires Plaintiff to establish that the elements of ORS § 164.075 are met. Plaintiff has not done so. He has not alleged that any Moving Defendant participated in an enterprise that, by the methods specified in the statute, "compelled another person to either deliver property or services to the person or to a third person" or that prevented a person "from reporting unlawful conduct to a law enforcement agency." *See* ORS § 164.075. In sum, Plaintiff has failed to state a RICO claim under §1962(c).

In the context of a civil suit for conspiracy under § 1962(d), a failure to allege either a pattern of racketeering or an act otherwise unlawful under the statute is fatal to a claim of conspiracy brought under § 1962(d). *See Wagh v. Metris Direct, Inc.*, 363 F.3d 821, 831 (9th

---

[28] Plaintiff also has not alleged any action taken by any defendant related to *any* proceeding that would have violated the statute. *See* 18 U.S.C. § 1513(a)(1) (retaliation by murder or attempted murder); *id.* § 1513(b) (retaliation by bodily injury or damage to tangible property, or threat to so retaliate); *id* § 1513(e) (retaliation by interfering with employment for providing law enforcement "truthful information relating to the commission or possible commission of any Federal offense").

[29] Even if Plaintiff's allegation that District Attorney Brown offered to drop the charges if Plaintiff paid money to Shannon Wood could qualify as attempted extortion, it cannot by itself support a RICO claim because it is a single act and § 1962(c) requires two or more qualifying acts of racketeering activity. Nor does Plaintiff allege how this alleged attempted extortion obstructed, delayed, or affected commerce as required under § 1951 or caused injury to plaintiff's "business or property" as required under § 1964(c).

[30] "Racketeering activity" includes "extortion . . . chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1).

Cir. 2003) ("Since [plaintiff] has not satisfied the pleading requirements for [subsections (a), (b), or (c) of § 1962], he has also not alleged sufficient facts to state a claim under [section 1962(d)]."), *overruled on other grounds*, *Odum v. Microsoft Corp.*, 486 F.3d 541, 551 (9th Cir. 2007); *Beck v. Prupis*, 529 U.S. 494, 505 (2000) ("[T]o establish a civil RICO conspiracy, a RICO conspiracy plaintiff [must] allege injury from an act . . . that is independently wrongful under RICO."). Because Plaintiff has failed state a claim under § 1962(c), he has also failed to state a RICO conspiracy claim under § 1962(d).

**D.  State Law Claims**

Plaintiff brings eight claims under state law: malicious prosecution; abuse of process; wrongful termination; IIED; defamation; age discrimination;[31] tortious interference; and negligent oversight, training, and supervision. The County Defendants argue that Plaintiff failed to provide notice of his claims under the Oregon Tort Claims Act (OTCA) and that Plaintiff fails to state a claim. The District Defendants argue that Plaintiff's claims are barred by the statute of limitations and that Plaintiff fails to state claim.

**1.  OTCA**

The OTCA governs notice requirements for tort claims against Oregon public bodies and their officers, employees, and agents. ORS § 30.275(1). For torts other than wrongful death, the OTCA requires plaintiffs to provide defendants with notice "within 180 days after the alleged loss or injury." *Id.* § 30.275(2)(b). The notice requirement may be satisfied by formal or actual

---

[31] Plaintiff does not reference a specific common law or statutory provision. The Court construes his claim as under ORS § 659A.030(1)(a), which provides in pertinent part: "It is an unlawful employment practice . . . [f]or an employer, because of an individual's . . . age if the individual is 18 years of age or older . . . to discharge the individual from employment."

notice[32] or by "[c]ommencement of an action on the claim by or on behalf of the claimant within

the applicable time period." *Id.* § 30.275(3). Formal notice must describe "the time, place, and

circumstances giving rise to the claim, so far as known to the claimant." *Id.* § 30.275(4)(b); *see*

*also Moore v. Portland Pub. Schs.* 328 Or. App. 391, 404 (2023) (explaining that the notice must

"provide sufficient facts about the places and circumstance of the underlying events to give

defendants an opportunity to investigate the alleged tort promptly and ascertain the facts"

(quotation marks omitted)). The OTCA's notice requirement is mandatory. *See* ORS

§ 30.275(1); *Urb. Renewal Agency of City of Coos Bay v. Lackey*, 275 Or. 35, 40 (1976)

("[P]roof of notice sufficient to satisfy the requirements of ORS [§] 30.275 is a mandatory

requirement and a condition precedent to recovery under the Oregon Tort Claims Act."). A

plaintiff bears "the burden of proving that notice of claim was given as required." ORS

§ 30.275(7); *see also Moore*, 328 Or. App. at 401-02 (upholding dismissal where the plaintiff

failed to give adequate tort claims notice (citing *Urban Renewal*)); *Curtis v. Oregon*, 2013 WL

3466533, at *4 (D. Or. July 9, 2013) (dismissing tort claims where the plaintiff failed to plead

that he gave a notice of his claim under ORS § 30.275).

 Plaintiff alleges that on March 18, 2020, he served a tort claims notice to the School

Board Defendants. FAC ¶ 72. He alleges no facts showing that he provided a tort claim notice

relating to his criminal investigation or prosecution or served one on the County Defendants. His

only argument in response to the County Defendants' motion based on the OTCA was to argue

that he "properly filed a tort claim," and that tolling should apply. To the extent his reference to a

---

[32] Under the OTCA's notice requirement "'actual notice' is a communication that
(1) allows the recipient to acquire 'actual knowledge of the time, place, and circumstances' that
give rise to the specific claim or claims that the plaintiff ultimately asserts; and (2) would lead a
reasonable person to conclude that the plaintiff has a general intent to assert *a* claim." *Flug v.
Univ. of Or.*, 335 Or. 540, 553 (2003) (emphasis in original).

"tort claim" was to his March 18, 2020 tort claims notice, that cannot provide notice to the County Defendants or to any conspirator in the prosecutorial conspiracy for claims relating to the criminal investigation and prosecution. The Court already has rejected Plaintiff's tolling argument. The Court thus rejects Plaintiff's arguments that the OTCA does not bar the state claims arising out of conduct related to the prosecutorial conspiracy and against the prosecutorial conspiracy law enforcement participants.

The Court first considers Plaintiff's state malicious prosecution claim, IIED claim, and tortious interference claim, which are based on the criminal investigation and prosecution. The Court dismisses these claims against Phillips and Deputies Moore and Dotson for failure to comply with the OTCA. (Plaintiff fails to show that the tort claims notice provided to Phillips included notice of claims based on the criminal investigation and prosecution.) Shannon Wood, however, was not a school employee or agent when acting with respect to the criminal investigation and prosecution and thus did not require notice under the OTCA. The Court declines to dismiss these claims against Wood for failure to provide notice under the OTCA. The Court rejects that these claims are brought against any other remaining Moving Defendant. Thus, the Court will only consider whether Plaintiff has stated these claims against Shannon Wood.

For Plaintiff's state claims of abuse of process, wrongful termination, age discrimination, and negligent training and supervision, the Court declines to dismiss these claims against Jon Wood, Phillips, the School District, and Shannon Wood[33] for failure to comply with the OTCA. The Court rejects the argument that these claims are brought against any other remaining Moving Defendant.

---

[33] The Court declines to dismiss the state claims arising out of the administrative conspiracy against Shannon Wood, who was a school employee at the time, for failure to comply with the OTCA at this stage based on her participation in the alleged administrative conspiracy because a tort claims notice was served on her alleged co-conspirators.

For Plaintiff's defamation claim, the Court dismisses that claim against Deputies Moore and Dotson for failure to comply with the OTCA. The Court declines to dismiss this claim based on the OTCA against Phillips, the School District, Jon Wood, or Shannon Wood.

Plaintiff may amend the dismissed claims if he can cure the OTCA defect. To do so, Plaintiff must allege in good faith that he complied with the OTCA for these dismissed claims and these Defendants.

### 2.  Statutes of Limitations

As discussed, the presumptive Oregon statute of limitations for personal injury actions is two years. *Douglas v. Noelle*, 567 F.3d 1103, 1109 (9th Cir. 2009); *Owen*, 2023 WL 5672887, at *3 (citing ORS § 12.110(1)). The general statute of limitations for claims against public bodies is two years, with exceptions, one of which, for defamation, applies here. *See* ORS § 30.275(9) (setting forth general two-year statute of limitations for claims against public bodies). The applicable statute of limitations for Plaintiff's age discrimination claim is five years. *See* ORS § 659A.875(1)(b).[34]

A two-year statute of limitations applies to Plaintiff's claims for abuse of process, wrongful termination, tortious interference, and negligent oversight, training, and supervision. All the relevant alleged events on which those claims are based occurred before December 12, 2020 (two years before Plaintiff filed this case). There is no discovery rule issue and the Court has rejected Plaintiff's tolling argument, with leave to amend. Accordingly it is apparent from

---

[34] The District Defendants assert that a one-year statute of limitations applies to Plaintiff's age discrimination claim under ORS § 659A.030. In 2019, however, the Oregon Legislature passed SB 726, which the changed statute of limitations applicable to an age discrimination claim brought under ORS § 659A.030 from one year to five years. *See* Or. Laws. 2019, ch. 343, § 6 (amending *former* ORS § 659A.875(2)). The new statute of limitations applies to prohibited conduct "occurring on or after the effective date of th[e] 2019 Act." *See id.* § 10(1). The effective date of the 2019 Act was September 29, 2019, and the School Board issued its final decision in November 2019.

the face of the FAC that those claims are time barred. The Court therefore dismisses those claims, with leave to amend if Plaintiff can allege facts to support tolling of the statute of limitations.

A two-year statute of limitations applies to Plaintiff's IIED claim remaining against Shannon Wood. Nearly all the relevant conduct by Wood giving rise to this claim, however, occurred before December 12, 2020, including her bringing her allegedly false charges to the School District that caused him to lose his job and to the District Attorney that caused both purportedly baseless arraignments. The limited conduct occurring within the limitations period is not conduct "extraordinarily beyond the bounds of socially tolerable behavior" sufficient to support an IIED claim. *See McManus v. Auchincloss*, 271 Or. App. 765, 781 (2015) (quotation marks omitted). Thus, this claim is time barred. Plaintiff's remaining claims, however, may not be time barred.

### 3.  Claims Potentially Not Time Barred

The remaining claims that might arise from events alleged to have occurred within the applicable limitations periods are age discrimination, defamation, and the state malicious prosecution claim against Shannon Wood.

#### a.  Age Discrimination

Plaintiff's claim for age discrimination, which Plaintiff brings against the School District, Superintendent Phillips, and Principal Jon Wood, falls within the applicable five-year statute of limitations. The FAC, however, does not contain allegations sufficient to support an inference that Plaintiff was discharged *because of* his age.[35] Indeed, Plaintiff's FAC is replete with

---

[35] In his response to the District Defendant's motion to dismiss, Plaintiff asserts that "[o]ther School District employees, who were much younger than the Plaintiff, had ACTUALLY committed crimes," but "Defendants instead focused efforts on the Plaintiff who had NOT committed a crime, and fired him." The FAC contains no allegations about the age of any other

allegations of other motivations for the alleged conduct against Plaintiff. Because Plaintiff has

failed to state a claim for age discrimination under Oregon law, the Court dismisses Plaintiff's

age discrimination claim.

> **b. Defamation**

It is unclear whether Plaintiff's defamation claim is time barred. He alleges that Shannon

Wood publicized false statements to the School District and to the District Attorney and that

Wood, Phillips, and Meier further publicized those false statements to the Sheriff's Office and

District Attorney's office. Plaintiff also alleges that the District Attorney's office made false

statements. The FAC provides no dates or details, but these alleged statements appear to have

been made before and during Plaintiff's criminal investigation and prosecution. Although the

FAC is unclear, given the timing of Plaintiff's prosecution, these allegations appear to be outside

the one year limitations period. *See* ORS § 12.120(2) (providing one-year statute of limitations

for defamation claims).

Regardless of the limitations period, however, Plaintiff fails to state a claim. Plaintiff's

claim fails under Rule 8 of the Federal Rules of Civil Procedure. To satisfy the pleading

requirements of Rule 8, a claim for defamation must provide the defendant with "sufficient

notice of the communications complained of to allow [the defendant] to defend itself." *Natkin v.*

*Am. Osteopathic Ass'n*, 2018 WL 452165, at *17 (D. Or. Jan .17, 2018) (quoting *McGeorge v.*

*Cont'l Airlines, Inc.*, 871 F.2d 952, 955-56 (10th Cir. 1989)); *see also Robinson v. Pac. Ret.*

*Servs., Inc.*, 2005 WL 139075, at *3 (D. Or. Jan. 21, 2005) (dismissing a defamation claim and

requiring the plaintiff to "file an amended complaint alleging the nature of the defamatory

statements, when and to whom they were made"). Plaintiff alleges no details regarding the

---

employees, and even if it did, Plaintiff's conclusory allegations are insufficient to state a claim.
*See Starr*, 652 F.3d at 1216.

alleged defamatory statements, who made them, or when. Thus, this claim is dismissed, with leave to amend.

### c. Malicious Prosecution

As discussed above, Plaintiff's malicious prosecution claim is not time barred, and Plaintiff has alleged all the state law elements required to assert a claim against Shannon Wood. The missing element for Plaintiff's § 1983 malicious prosecution claim was the one specific to § 1983, which does not apply for his state law claim. Thus, Plaintiff states a claim against Wood for malicious prosecution under Oregon law.

### E.  Summary

The Court dismisses all claims against the Moving Defendants other than: (1) Plaintiff's substantive due process claim for reckless investigation against Phillips, Shannon Wood, and Deputies Moore and Dotson; and (2) Plaintiff's state law claim for malicious prosecution against Shannon Wood. Plaintiff has leave to replead if he can in good faith cure the identified deficiencies.

## CONCLUSION

The Court GRANTS Phillips' Motion for Joinder (ECF 48). The Court GRANTS IN PART the Moving Defendants' motions to dismiss (ECF 37, 40, 44). If Plaintiff believes that he can cure the deficiencies in the First Amended Complaint as identified in this Opinion and Order, he may submit a Second Amended Complaint not later than April 23, 2024.

**IT IS SO ORDERED**.

DATED this 26th day of March, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge